UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELIAS PEREZ,

          Plaintiff,

    v.

PEOPLEREADY, INC., et al.,

          Defendants.

Case No. 25-cv-04610-AMO

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: Dkt. Nos. 18, 19

Plaintiff Elias Perez sues against Defendants PeopleReady, Inc. ("PeopleReady") and Global Fixture Services, Inc. ("Global Fixture") on behalf of a putative class of employees and under California's Private Attorneys General Act ("PAGA"). PeopleReady's motion to compel arbitration, joined by Global Fixture, is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for March 12, 2026, is VACATED. *See* Civil L.R. 7-6, Fed. R. Civ. Pro. 78(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court **GRANTS** the motion to compel arbitration for the following reasons.

## I. BACKGROUND

PeopleReady, Inc. ("PeopleReady") is a staffing company specializing in providing temporary workers ("Temporary Associates") to businesses in need of temporary employees. Vargas Decl. (Dkt. No. 18-3) ¶ 3. PeopleReady provides temporary workers to its customers throughout California. *Id.* ¶ 3. Global Fixture is a PeopleReady customer. *Id.* ¶ 4. PeopleReady assigned Perez to work at Global Fixture on a temporary basis. *Id.* ¶ 5.

On September 7, 2023, as part of his onboarding to work for PeopleReady as a Temporary Associate, Perez signed an agreement to arbitrate any claims he may have that arise out of his

employment with PeopleReady, as well as its "parent company" and "any customer for whom" Plaintiff performed work.  Vargas Decl. ¶ 6, Ex. A ("arbitration agreement").[1]

On March 4, 2025, Perez filed a class action complaint against Defendants, asserting eight causes of action.  After serving Defendants, Perez filed the operative first amended class and representative action complaint.  *See* Dkt. No. 1-2 at 5-26 ("FAC").  Perez asserts the following claims for relief: (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay all wages, (4) knowing and intentional failure to comply with itemized employee wage statement provisions, (5) failure to timely pay wages due at termination, (6) failure to timely pay employees, (7) failure to reimburse business expenses, (8) failure to pay for all hours worked, including overtime hours, (9) violation of Business and Professions Code § 17200, and (10) penalties pursuant to California Labor Code section 2699(f).  *Id.*  Perez generally alleges the existence of a joint employment relationship between PeopleReady and Global Fixture, including as "joint employers."  FAC ¶ 18.

## II.    DISCUSSION

PeopleReady moves to compel Perez's claims to arbitration and stay the case.  Dkt. No. 18. Global Fixture joins PeopleReady's motion.  Dkt. No. 19.  The Federal Arbitration Act ("FAA") provides that written arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2).  The FAA reflects a "liberal federal policy favoring arbitration agreements."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)).  The FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Howsam v. Dean Witter Reynolds*,

---

[1] The Court recites excerpts of the arbitration agreement to the extent necessary in the analysis below.

2

537 U.S. 79, 83 (2002). Where a valid agreement to arbitrate exists and encompasses the dispute at issue, "then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (internal citations omitted).

District courts apply the summary judgment standard of Federal Rule of Civil Procedure 56 in resolving motions to compel arbitration. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Further, when evaluating whether a party is bound by an arbitration agreement, federal courts " 'apply ordinary state-law principles that govern the formation of contracts' to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecomms. Am., LLC,* 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (noting that although the FAA preempts state laws that are only applicable to arbitration agreements, general contract principles and defenses "grounded in state contract law, may operate to invalidate arbitration agreements") (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). To form a contract under California law, there must be "actual or constructive notice of the agreement" and a "manifest[ation of] mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023). If the foundational elements are satisfied, the agreement shall be enforced so long as it is fair and conscionable. The plaintiff bears the burden of showing that an arbitration agreement is unconscionable. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997) ("a party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense").

Perez does not dispute that he signed the arbitration agreement, nor does he dispute that his claims are encompassed within the scope of the arbitration agreement. Instead, Perez argues that the arbitration agreement is unconscionable and, therefore, unenforceable. *See generally* Dkt. No. 20 (Perez's opposition brief). "It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). Under California law, a court

United States District Court
Northern District of California

3

may refuse to enforce a provision when it is procedurally and substantively unconscionable. *Id.* at 1280. Although both forms of unconscionability must be present, "they need not be present in the same degree." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (citation omitted). The two forms of unconscionability operate on a "sliding scale." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000). "[T]he more substantively oppressive a contract term, the less procedurally unconscionable it must be to be deemed unenforceable, and vice versa." *Id.* at 114. The party opposing arbitration bears the burden to show both procedural and substantive unconscionability. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012); *Armendariz*, 24 Cal. 4th at 114.

The Court first determines whether Perez has established procedural unconscionability before considering whether he has shown substantive unconscionability.

### A.        Procedural Unconscionability

Procedural unconscionability exists where there is "oppression or surprise due to unequal bargaining power." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt Dev., LLC*, 55 Cal. 4th 223, 236 (2012)). "Oppression" concerns "an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Lim*, 8 F.4th at 1000 (quoting *Poublon*, 846 F.3d at 1260). California law provides that oppression may be established by showing that an agreement was a contract of adhesion, *Lim*, 8 F.4th at 923, which is a contract "imposed and drafted by the party of superior bargaining strength, relegat[ing] to the subscribing party only the opportunity to adhere to the contract or reject it," *Poublon*, 846 F.3d at 1260 (quoting *Armendariz*, 24 Cal. 4th at 113); *see also OTO, LLC v. Kho*, 8 Cal. 5th 111, 126 (2019) ("An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a take-it-or-leave-it basis." (quotation marks and citations omitted)). "Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear

*United States District Court
Northern District of California*

danger of oppression and overreaching." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (quotation marks and citation omitted).

Perez asserts that the arbitration agreement is a contract of adhesion imposed as a condition of employment. Dkt. No. 20 at 6-7. PeopleReady does not dispute that the arbitration agreement is a contract of adhesion but argues there is no other evidence of oppression or surprise. *See* Dkt. No. 22 at 4-5. "If the contract is adhesive, the court must then determine whether other factors are present which, under established legal rules – legislative or judicial – operate to render it [unenforceable]." *Armendariz*, 24 Cal. 4th at 113 (alteration in original) (quotations and citation omitted). Such factors that may establish oppression include:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*OTO*, 8 Cal. 5th at 126-27 (citation omitted). California courts have consistently held that the fact that an arbitration agreement is an adhesion contract does not render it automatically unenforceable as unconscionable. *See, e.g.*, *Sanchez v. Carmax Auto Superstores Calif., LLC*, 224 Cal. App. 4th 398, 402 (2014) ("[T]hat the agreement is required does not make it unenforceable, absent other factors."); *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127 (1999) ("[T]he cases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis."). In fact, where the arbitration provisions presented in a contract of adhesion are highlighted for an employee, any procedural unconscionability is "limited." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 179 (2015).

Here, Perez advances that the arbitration agreement was procedurally unconscionable based on (1) the arbitration agreement being presented to him as a condition of employment in a small room and along with several other documents, and (2) the fact that the JAMS arbitration rules were not physically attached. The Court takes up these arguments in turn.

*United States District Court*
*Northern District of California*

5

On the first issue, Plaintiff contends that the arbitration agreement is procedurally unconscionable because he believed that failure to sign would result in not being hired, because a PeopleReady representative remained in the same "small room" with him while he reviewed the paperwork, "creating an atmosphere of pressure and intimidation," and because he did not believe that any part of the onboarding paperwork was negotiable. Dkt. No. 20 at 7 (citing Perez Decl., Dkt. No. 20-1). As an initial matter, the plain language of the arbitration agreement itself confirms it is not mandatory:

> Arbitration is Voluntary. I understand that arbitration is not a mandatory condition of my employment with the Company and my decision to sign or not sign this Agreement is entirely voluntary. . . . I further understand that if I do not sign this Agreement, I will not be subject to any adverse employment action as a consequence of that decision.

*See* Vargas Decl., Ex. A § 2 (Dkt. No. 18-2 at 5). The arbitration agreement was therefore not adhesive because it was plainly voluntary, mitigating any claimed oppression on the part of PeopleReady. Moreover, Perez's belief that he would not be hired if he did not sign the arbitration agreement does not establish procedural unconscionability. *See Lagatree*, 74 Cal. App. 4th at 1127.

Perez's contentions regarding the physical conditions to which he was subjected during his execution of onboarding documents present a different issue. In *Baltazar v. Forever 21, Inc.*, the California Supreme Court enforced an arbitration agreement offered on a "take-it-or-leave-it" basis, explaining that the adhesive nature of an employment arbitration agreement does not itself render it unconscionable; there must also be "oppression" or "sharp practices," such as the employee being "lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement." *Id.*, 62 Cal. 4th at 1245. Perez describes that a PeopleReady representative remained in the same small room with him while he reviewed the paperwork, creating an atmosphere of pressure and intimidation and implicating the "oppression" or "sharp practices" noted in *Baltazar*. *See* Perez Decl. (Dkt. No. 20-1) ¶ 5. PeopleReady responds that Perez's "subjective understanding, feelings, and fears are not reasonable" and thus should not factor into the analysis regarding surprise or oppression. Dkt. No. 22 at 3. Further, PeopleReady counters with a

United States District Court
Northern District of California

declaration describing the accommodations made for Perez related to the review and execution of onboarding paperwork, including that Perez had the opportunity to execute the documents online from a different location and that the room in which Perez executed his onboarding paperwork is a 40-by-20 foot open room which includes the area where applicants can review and sign onboarding paperwork at their leisure while seated at private desks. *See* Tamariz Decl. (Dkt. No. 22-1) ¶¶ 3-8. While this countervailing evidence creates a dispute of fact, the Court need not resolve it because Perez does not claim that anyone misrepresented the arbitration agreement, refused to let him read it, or denied him the ability to ask questions or take additional time to review the agreement. The facts here thus do not resemble the "sharp practices" of oppression noted in *Baltazar*. Given that Perez fails to establish that the arbitration agreement that PeopleReady utilized sharp practices to obtain his assent, he falls well short of the oppression necessary to establish procedural unconscionability.

The second issue of procedural unconscionability asserted by Perez is that the arbitration agreement incorporates JAMS Employment Arbitration Rules & Procedures but does not attach them. Dkt. No. 20 at 7. In *Baltazar*, the California Supreme Court held that the failure to attach arbitration rules "without more" does not alter the unconscionability analysis. *Id.*, 62 Cal. 4th at 1246. The California Court of Appeal similarly held that the failure to attach an arbitration service's rules did not render an agreement procedurally unconscionable because the rules were "easily accessible" on the Internet. *Lane v. Francis Capital Management, LLC*, 224 Cal. App. 4th 676, 691-92 (2014). The California Supreme Court and Court of Appeal have thus rejected the purported failure to attach an arbitration service's rules to an arbitration agreement as a standalone basis for unconscionability where the rules are readily available and the employee is told how to access them. The arbitration agreement at bar accomplishes this and goes further – it not only identifies JAMS as the arbitration service, it provides a direct URL to the JAMS employment rules and states that "[a] copy of such rules can also be provided upon request from human resources." Vargas Decl., Ex. A § 2 (Dkt. No. 18-2 at 6). Perez submits no evidence that he ever requested the rules or that any such request was refused. Under *Baltazar* and *Lane*, the absence of a hard-copy attachment under these circumstances does not establish procedural unconscionability.

7

Perez fails to establish oppression or surprise that would render the arbitration agreement procedurally unconscionable. The Court thus turns to consider whether Perez demonstrates a sufficiently high degree of substantive unconscionability to render the agreement unenforceable.

## B.    Substantive Unconscionability

Substantive unconscionability exists where terms are "overly harsh," "unduly oppressive," "unreasonably favorable," or "shock the conscience." *Poublon*, 846 F.3d at 1261 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910-11 (2015)). "Not all one-sided contract provisions are unconscionable." *Sanchez*, 61 Cal. 4th at 911. Substantive unconscionability exists where terms are "unreasonably favorable to the more powerful party," not simply an "old-fashioned bad bargain." *Baltazar*, 62 Cal. 4th at 1244 (citation omitted). Said another way, a contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather the term must be so one-sided as to shock the conscience. *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 246.

Perez brings two arguments to support his claim that the arbitration agreement is substantively unconscionable: (1) the agreement's scope is overbroad and extends beyond employment; and (2) the agreement is non-mutual because affiliated entities and others can enforce it against him, but not vice versa. The Court addresses these arguments in turn.

### 1.    Scope of Arbitration Agreement

Perez focuses on the language that "any claim or dispute between the Parties that may be subject to arbitration including, but not limited to any claim arising out of or relating to this Agreement or breach of this Agreement, my employment, application for employment, and/or termination of employment, or any other matter, shall be submitted to and resolved by binding individual arbitration[.]" Dkt. No. 20 at 8 (citing arbitration agreement). He argues that the provisions "any claim or dispute" as well as "or any other matter" makes the provision overbroad and therefore impermissible based on the California Court of Appeal's decision in *Cook v. University of Southern California*, 102 Cal. App. 5th 312 (2024). In that case, the court found unconscionable a clause that required the plaintiff to arbitrate "any and all claims" she might have against the defendant university "or any of its related entities, including but not limited to faculty

8

United States District Court
Northern District of California

practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise." *Id.* at 326. The agreement at issue there, conversely, did not require the related entities to arbitrate their claims against the plaintiff. *Id.*

In response to Perez's reliance on *Cook*, PeopleReady cites several cases in which subsequent courts have rejected employment plaintiffs' efforts to rely on the overbreadth analysis from *Cook*. *See* Dkt. No. 22 at 6-8 (citing *Johnston v. Sensei AG Holdings, Inc.*, No. B334773, 2025 WL 703258, at *6 (Cal. Ct. App. Mar. 5, 2025) (unpublished); *Tanner v. Tax Servs. of Am., Inc.*, No. 25-CV-01940-DMR, 2025 WL 1580737, at *6 (N.D. Cal. June 4, 2025); *Abrahamyan v. Citibank N.A.*, No. CV 24-01106-MWF (EX), 2025 WL 1720192, at *4 (C.D. Cal. June 9, 2025); *Burkhardt v. Extra Space Mgmt., Inc.*, No. 2:25-CV-00547-DJC-CKD, 2025 WL 2172287, at *6 (E.D. Cal. July 31, 2025)). In each of those cases, the courts distinguished the arbitration provision at issue in *Cook*, which plainly required the plaintiff to arbitrate claims unrelated to her employment, from the arbitration provisions before them, which limited arbitrability to claims arising from the employment relationship. *Id.* The same distinction exists here. The scope of the arbitration agreement in this case is limited by its first sentence, providing that the parties

> agree that any claim or dispute between the parties that may be subject to arbitration including, but not limited to any claim arising out of or relating to this Agreement or breach of this Agreement, [Perez's] employment, application for employment, and/or termination of employment, or any other matter, shall be submitted to and resolved by binding individual arbitration under the [FAA].

Dkt. No. 18-2 at 5. The scope of the arbitration agreement is tethered to any arbitrable claim or dispute between the parties arising out of Perez's employment or termination from employment or relating to the arbitration agreement itself. *Id.* Read in context, the terms "any claim" and "or any other matter" serve as catch-all terms for other employment-related disputes "between the Parties" – not an obligation to arbitrate every claim possible between Perez and PeopleReady. *Id.* The arbitration agreement does not contain the "irrespective of whether [claims] arise from the employment relationship" language that drove the result in *Cook*. *Id.*, 102 Cal. App. 5th at 316, 321, 326. Therefore, Perez fails to establish that the scope of the arbitration agreement contributes to a finding of substantive unconscionability.

9

### 2.     Mutuality of Arbitration Agreement

Pressing further on substantive unconscionability, Perez argues that the arbitration agreement lacks mutuality because it requires him to arbitrate claims against PeopleReady's "parent company, subsidiaries, and related companies, and all of their respective employees, agents, offices, directors, shareholders, successors, and assigns," while those entities are not obligated to arbitrate claims against him. Dkt. No. 20 at 8. Perez again relies on *Cook* to argue that this provision renders the arbitration agreement unenforceable. *Id.* at 8-9.

Perez's reliance on *Cook* on this front is misplaced. The agreement at issue in *Cook* required the plaintiff to arbitrate all claims she might have against the defendant university as well as an expansive class of non-signatories, allowing them to enforce the arbitration agreement with relative ease compared to the one-sided, burdensome path to enforcement set for the plaintiff. *Id.*, 102 Cal. App. 5th at 326-28. The arbitration agreement here instead provides that either party may compel a claim to arbitration – the arbitration agreement provides that "The Company and I (together, the 'Parties') agree that any claim or dispute between the Parties . . . shall be submitted to and resolved by binding individual arbitration." Dkt. No. 18-2 at 5. The third-party-beneficiary language in the arbitration agreement is thus framed in terms of who may benefit from and enforce the arbitration agreement as part of the parties' employment relationship, not in terms of forcing Plaintiff to arbitrate every conceivable claim "against" a broad universe of non-signatories. *Cf. Cook*, 102 Cal. App. 5th at 326-28. Mutuality takes this arbitration agreement outside the bounds of *Cook* as either side may equally compel arbitration of covered employment-related disputes between them, and there is no carve-out preserving a unilateral right for PeopleReady or its affiliates to litigate those disputes in court. *See Burkhardt*, 2025 WL 2172287, at *8 (distinguishing *Cook* in similar mutuality challenge). Because there is no carve-out granting PeopleReady or its affiliates distinct rights from those of Perez, the arbitration agreement contains the necessary "modicum of bilaterality." *Armendariz*, 24 Cal .4th at 117. Perez fails to show a substantively unconscionable lack of mutuality.

* * *

United States District Court
Northern District of California

Having determined that the arbitration agreement is neither procedurally nor substantively unconscionable and must be enforced, the Court must consider Defendants' request to stay these proceedings pending arbitration. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Defendants' motion to stay is therefore GRANTED.

**III.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' motion to compel and motion to stay. The parties **SHALL FILE** a joint status report on June 1, 2026, and every 90 days thereafter, to inform the Court of the status of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: March 6, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

11